[No. 5558–2–III.   Division Three.   May 22, 1984.]

*In the Matter of* CHRISTIAN A. NELSEN, ET AL.

BARBARA HOESCH, *Appellant,* v. ACE NELSEN, *Respondent.*

*William Bloor,* for appellant.

*Joshua F. Grant VII,* for respondent.

GREEN, J.—Barbara Hoesch, an Oregon resident, appeals the modification of an Oregon decree by a Washington court awarding her ex–husband Ace Nelsen, a Washington resident, custody of their minor children. The dispositive issue is whether this state had jurisdiction to modify the

Oregon custody award.

Barbara Hoesch and Ace Nelsen were married December 9, 1975. Two children were born of the marriage. The family resided in Oregon. In September of 1980 the parties separated and shortly thereafter Mr. Nelsen moved to Washington. Ms. Hoesch filed a petition to dissolve their marriage in Union County, Oregon, and on November 21, 1980, the Union County court entered an order granting Ms. Hoesch temporary custody of the children during the pendency of the action. On December 8, 1980, Mr. Nelsen took the children from their Oregon home without Ms. Hoesch's consent. On December 16 Mr. Nelsen was served with the dissolution petition. The record is void of any proof that Mr. Nelsen was ever served with the November 21 order granting temporary custody of the children to Ms. Hoesch. On April 20, 1981, a default decree was entered by the Union County court dissolving the marriage, dividing the parties' property and awarding permanent custody of the children to Ms. Hoesch. Notwithstanding his awareness of this decree, Mr. Nelsen continued to retain physical custody of the children. Further, except for a post office box number, he never revealed his address to Ms. Hoesch until June or July of 1981.

On November 23, 1981, he filed a petition for custody in Asotin County, Washington. On December 12 Ms. Hoesch met Mr. Nelsen in Clarkston and, over his objection, took the children to Oregon. On December 16, without notice to Ms. Hoesch, the court in Asotin County entered an order granting Mr. Nelsen temporary custody of the children, ordered Ms. Hoesch to surrender the children to Mr. Nelsen and restrained her from interfering with his custody until his petition was heard on the merits. This order fails to mention the previous Union County, Oregon, decree awarding permanent custody of the children to Ms. Hoesch. Two days later Mr. Nelsen presented the Asotin order to the court in Umatilla County, Oregon, in support of a petition for a writ of habeas corpus. The parties agree that although Ms. Hoesch was present, without counsel, at the

Umatilla County hearing, no testimony was taken. The Umatilla County court, apparently without knowledge of the Union County, Oregon, decree granted full faith and credit to the temporary order from Asotin County and granted the writ. Ms. Hoesch was required to deliver the children to Mr. Nelsen and they returned to Clarkston.

After a trial on November 19, 1982, the court entered findings of fact, conclusions of law and decree granting custody of the children to Mr. Nelsen and "very liberal" visitation rights to Ms. Hoesch so long as the children remain within the jurisdiction of the court. Ms. Hoesch appeals contending the Washington court should have declined to modify the Oregon decree.

In 1979 Washington adopted the Uniform Child Custody Jurisdiction Act (UCCJA). RCW 26.27. The general purpose and policy reasons underlying that act as stated in RCW 26.27.010(1) are to

> (a) Avoid jurisdiction competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well–being;
> . . .
> (d) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;
> (e) Deter abductions and other unilateral removals of children undertaken to obtain custody awards;
> (f) Avoid relitigation of custody decisions of other states in this state insofar as feasible;
> (g) Facilitate the enforcement of custody decrees of other states; . . .

Reinforcing these general purposes, the act in RCW 26.27.080(2) further provides:

> Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody has improperly removed the child from the physical custody of the person entitled to custody . . .

In light of these legislative purposes, we examine the

record.

That record shows Mr. Nelsen's initial removal of the children from the family home in the state of Oregon on December 8, 1980, was in violation of a November 21, 1980, Union County order granting Ms. Hoesch temporary custody of the children during the pendency of the dissolution proceeding. Mr. Nelsen testified he had not been served with such order at the time he took the children in December 1980; he admitted, however, that Ms. Hoesch's babysitter objected to his taking the children telling him there was an outstanding order restraining him from doing so. Nevertheless, Mr. Nelsen took the children. There is no evidence showing when or if a copy of the restraining order was served upon Mr. Nelsen. The trial court, on those facts, refused to conclude Mr. Nelsen was in violation of the Oregon order. In light of the proof, the court's conclusion was technically correct. However, when Mr. Nelsen retained custody of the children after receiving notice of the decree awarding Ms. Hoesch custody, he was in violation of the decree.

Further, the record is void of any proof that Mr. Nelsen informed the court in Umatilla County, Oregon, that Ms. Hoesch had been awarded custody of the children by a decree of the Union County, Oregon, court. *Cf. In re Marriage of Verbin,* 92 Wn.2d 171, 183, 595 P.2d 905 (1979) (a case decided prior to adoption of the UCCJA, the court refused to give full faith and credit to a Maryland custody decree because the father had failed to fully apprise the Maryland court of Washington custody proceedings). On the record before this court, the only matter presented in Umatilla County was the temporary custody order from Asotin County, Washington.

This conduct contravenes the spirit and purpose of the Uniform Child Custody Jurisdiction Act. To countenance the conduct in this case can only encourage, rather than deter, abductions or other devices to obtain possession of children.

Consequently, the trial court should not have accepted

jurisdiction to modify the Oregon decree. It is clear the children were removed from the custody of the mother without her consent initially and at the habeas hearing in Umatilla County by not revealing the existence of the Union County decree. Under these circumstances, if the Oregon decree is to be modified, it should be done so by the Oregon courts and not those in this state.

Reversed.

MUNSON, C.J., and THOMPSON, J., concur.